STATE of Missouri, Respondent,

v.

Roger BROWN, Appellant.

No. 40403.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 29, 1979.

**414**

Robert C. Babione, Public Defender, Christelle Adelman Adler, Kevin C. Curran, Asst. Public Defenders, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Thomas Dittmeier, St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant was convicted by a jury on all three counts of a three count indictment. Counts I and II charged defendant with the First Degree Robbery of Joseph Williams and Karen Cook, respectively. Count III charged defendant with Armed Criminal Action in the commission of the aforementioned robberies. Following his conviction, defendant was sentenced (pursuant to the Second Offender Act) to ten years imprisonment on each of the first two counts, and thirty years imprisonment for the third. These sentences were scheduled to run concurrently.

Defendant raises two points of error on appeal: 1) that the trial court erred in admitting into evidence portions of a videotape which made reference to crimes committed by defendant other than those for which he stood charged; and 2) that the trial court further erred in refusing his Motion to Suppress the in-court identification of defendant because the pre-trial photographic identification procedure was so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification. Although defendant does not challenge the sufficiency of the evidence, a rather detailed recitation of the facts is necessary due to the nature of his contentions.

Ms. Cook and Mr. Williams were robbed at gun-point upon returning from a late date in the early morning hours of June 24, 1977. A man approached the pair while they were sitting in Mr. Williams' automobile in front of Ms. Cook's home. He began by asking directions but soon thereafter drew a revolver, told the couple to keep their hands where he could see them, and not to look at his face. He then demanded their valuables. Mr. Williams gave the man his wallet, money clip and keys. Ms. Cook relinquished her purse. The man instructed them to lie on the floor of the automobile for fifteen minutes while he made good his escape. The couple acted as per these instructions, and upon sitting up, found he was gone. The police were called and the assailant described.

Four days later, on June 28, 1977 defendant entered a police-maintained, undercover "fencing" operation and sold the proprietor several credit and identification cards. Among those sold were Ms. Cook's. The "cameras were rolling", as it were, and the entire transaction was recorded on videotape. On film, defendant explained to the "proprietor" how he happened by these items he was attempting to market and, in so explaining, mentioned his involvement in criminal activities other than those for which he was on trial.

On July 1, 1977, the police arranged for a photographic identification session with the two victims. This interview took place at the Cook residence and, apparently, Ms. Cook and Mr. Williams were shown the various photographs while sitting next to each other at a table in the home. The police gave five photographs to Mr. Williams who, as he looked at them, would then lay the pictures on the table for Ms. Cook to view. Mr. Williams testified that he immediately recognized defendant's picture when first he saw it, but did not convey this recognition to the police officers until Ms. Cook made the same identification. At the time, Ms. Cook's photographic identification of defendant was somewhat more tentative than that of Mr. Williams, but her in-court identification was equally unequivocal.

Defendant first contends that the trial court erred in refusing to suppress portions of videotape wherein defendant made reference to crimes he had committed other than those charged, the court thereby erroneously admitting evidence of unrelated crimes.

Generally, a confession or an admission is inadmissible when its language implicates the defendant in the commission of a different or separate offense. If that part of the admission which pertains to the crime being tried can be separated from the part or parts relating to the other offenses, only that portion material to the issue on trial is deemed admissible. *State v. Wolff*, 337 Mo. 1007, 87 S.W.2d 436, 443 (1935). However, where those portions are inseparable, courts almost universally hold the evidence admissible in its entirety, if given subject to a cautionary instruction. What may be considered reasonably separable is left to the sound discretion of the trial court. *Bell v. State*, 234 Md. 254, 198 A.2d 895, 896–897 (Md.App.1964); 23 C.J.S. Criminal Law, § 820, p. 201; 29 Am.Jur.2d, Evidence § 536; 2 Wharton, Criminal Law (12th Ed.) § 361; Wigmore on Evidence (3rd Ed.), § 2100, Fn. 9.

■ In the present instance, after having viewed the seven minute videotape, the trial court was of the opinion that the reference to other crimes was so "intricately woven in" with the evidence of this crime, as to make the two inseparable. We have carefully viewed the videotape and find that the trial court did not abuse its discretion in so holding. The videotape itself was not very long, and we believe that to edit those objectionable portions in the manner contemplated by defendant would have left the tape so fragmented and "piecemeal" as to render it useless to the prosecution and, in reality, would have amounted to its rejection.

The selling of *all* the credit cards, and other items, was inseparably interwoven and, in essence, constituted a single transaction. The other references came while defendant was laying out the cards and receiving the money. Moreover, defendant received a cautionary instruction to accompany the tape's admission, as per his request. Lastly, defendant's objection, though timely, was too broad in that he failed to specify which portions of the tape

he wished the court to delete. *State v. Tyler*, 306 S.W.2d 452, 456 (Mo.1957). We rule against defendant on this point.

Defendant next complains of the unduly suggestive nature of the photographic identification which, he argues, impermissibly tainted the in-court identification. Defendant argues that it is suggestive inasmuch as the victims making the identification were allowed to view the photographs together and thus *reinforce* each other's identification.

In determining whether an identification procedure employed by police is so unnecessarily suggestive as to impermissibly taint an in-court identification, we must look to the totality of the circumstances. *State v. Macon*, 547 S.W.2d 507, 512 (Mo.App.1977). And, even if the photographic identification is tainted or suggestive, the in-court identification is still admissible where there appears a sufficient factual basis for the independent identification. *Macon*, 547 S.W.2d at 512–513.

■ Aligning these principles against the present factual background, we hold that the admission of the victims' in-court identification of defendant was not erroneous. Although research has failed to disclose an identical situation in Missouri case law, i.e., where several witnesses made a photographic identification in each other's presence, several cases have adopted reasoning we consider illustrative.[1] *State v. Williams*, 448 S.W.2d 865 (Mo.1970); *State v. Carter*, 571 S.W.2d 779 (Mo.App.1978). Both of these cases involved a confrontation rather than a photographic identification. Both involved several witnesses who were permitted to confront a suspect at the same time and identify the suspect more or less conjunctively. Both courts indicated there was no constitutional requirement that identifying witnesses be separated when they make their identification, but rather that this was but one factor to be considered in determining the witness' credibility and in passing upon the totality of the circumstances. *State v. Williams*, 448

1. But see *Tafoya v. Eyman*, 315 F.Supp. 204, 209 (D.C.Ariz.1970); *Commonwealth v. Cofield*, 1 Mass.App. 660, 305 N.E.2d 858, 862

(1973); *Tate v. United States*, 268 A.2d 855, 857 (D.C.App.1970).

S.W.2d at 868; *State v. Carter*, 571 S.W.2d at 782.

Furthermore, we find an independent factual basis for the identification by each witness. There was a street light approximately one-car length from where the victims were sitting in their car. Williams testified that he was close to defendant and that he looked directly at defendant for three or four seconds. See *State v. Young*, 534 S.W.2d 585, 589 (Mo.App.1976); *State v. Carson*, 501 S.W.2d 503, 506 (Mo.App.1973). Ms. Cook testified that she saw defendant after he opened the car door. Their attention level was high due to the fact that their assailant had a gun which he was threatening to use. Under all these circumstances, we find a positive in-court identification with an adequate factual basis independent of the photographic identification.

Defendant's second point is without merit.

Affirmed.

GUNN and CRIST, JJ., concur.