STATE of Missouri, Respondent,

v.

Michael POWELL, Appellant.

No. 40383.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 26, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 15, 1980.

---

Daniel P. Reardon, Jr., St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, James R. Cumbee, Asst. Attys. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals his conviction by a jury of burglary, first degree and stealing in conjunction with burglary. The court sentenced the defendant under the Second Offender Act to serve ten years on the burglary charge and two years on the stealing charge, these sentences to run concurrently.

On June 29, 1977, Sidney Parker went to bed at approximately 1:30 a. m. Before retiring, he locked his entire house, including the kitchen window. Parker awoke between 2:30 and 3:00 a. m. to the sound of a loose floorboard squeaking. As he sat up in bed, a person appeared in the doorway of his bedroom and shined a light in his face. The man demanded money saying, "I'm going to blow your head off." Parker told the man that he did not have any money. After several minutes, the person departed slamming the bedroom door as he left. Approximately five minutes more passed before Parker arose and found the kitchen window and door open. Parker noticed that several items were missing, including an AM/FM stereo clock/radio which was introduced in evidence at trial as State's Exhibit 1 and identified by Parker as the clock/radio taken from his house.

The State called as a witness Homer Hoffman, an FBI agent, who testified that he set up and operated a "fencing ring" in St. Louis for several months during 1977. Hoffman explained that the fencing operation was a store operated by government agents to which individuals sold stolen goods. The fencing operation was a cooperative effort of the St. Louis Police Department, the Bureau of Alcohol, Tobacco and Firearms, the United States Treasury Department, and the FBI. Further, Hoffman explained that each transaction between the ring operators (government agents) and the individuals who sold goods was photographed and recorded.

The State also called Russell Whitner, the City of St. Louis police officer, who had operated the video and sound recording devices concealed in the building housing the fencing operation about noon on June 29, 1977. The video tape was admitted in evidence and shown to the jury. It revealed that two men, defendant and Hoskins, entered the building carrying various objects. Hoskins carried in the clock/radio identified as State's Exhibit 1 and placed it on the counter. It remained on the counter during most of the time Hoskins and defendant were in the store. While in the store, the two men made references to other stolen items, although not to others from the Parker home, and also made references to property defendant and Hoskins planned to steal in the future.

Early in the film, one of the agents and the two men discussed the items the men had brought with them:

Hoskins: We just got it last night, this morning while the mother-fuckers in their sleep.

Detective Herbert: While he was in the house!

Michael Powell: Yeah, damn right. Hold up, don't move or I'll bust your head, god damn it.

Detective Herbert: Oh, he woke up on you?

Michael Hoskins: Yeah, woke up on the damn bed and he raised up. Bust him across (inaudible).

Michael Powell: Give it up. We got to have it.

Detective Herbert: He didn't see you or anything, did he?

Michael Powell: No.

Michael Hoskins: No, no. We had all the lights off. We just had a flashlight.

Near the end of the film, the government agent paid Powell sixty-five dollars. After the payment, the two men discussed crimes they had committed in the past and other crimes they planned to commit in the future.

After the film's showing, Victor J. Herbert, Jr., a special agent of the Bureau of Alcohol, Tobacco, and Firearms, testified. He was one of the countermen in the operation and appeared in the film. He described his part in the operation and certain events that occurred in the film. During cross-examination, defendant had portions of the tape re-played and questioned Herbert extensively to show that it was Hoskins who brought in the clock/radio and related most of the facts of the break-in the night before.

The other man at the desk, Richard Sisco, a St. Louis police officer, also testified. He described his part in the fencing operation. On cross-examination, portions of the tape were again re-played and Sisco was similarly questioned about Hoskins' role in the transaction.

On appeal, defendant raises one point of error. He contends that the court erred in admitting in evidence and showing to the jury the tape because it contained evidence of separate and independent crimes not related to the crime for which he was charged. Specifically, he refers to testimony concerning a motor boat and trailer, antique telephones, a digital clock/radio, cars, tires, a television set, a tool box, and a battery charger. Defendant relies principally upon *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (1954) as authority for his position. There the court stated:

[T]he dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.

*Id.* at 307.

■ Using *Reese* as authority, defendant claims the evidence of the other crimes contained on the tape was irrelevant and therefore, its admission constituted reversible error. The trial court, in overruling the defendant's objection to the admission of the tape, determined that the evidence of other crimes was relevant and further found that it would be impossible to separate any objectionable comments contained on the tape from the rest of the exhibit. Although this case was tried prior to our ruling in *State v. Brown*, 584 S.W.2d 413 (Mo.App.1979) we believe that *Brown* controls here. Brown sold property to apparently the same fencing operation as did the defendant in this case. In *Brown* the videotape revealed evidence of other crimes not related to the one for which the defendant was on trial. We held that where the relevant and irrelevant material was inseparable, the entire videotape was admissible. A determination of what is reasonably separable is left to the sound discretion of the trial court. In *Brown* we found no abuse of discretion.

■ Here, the trial court and counsel viewed the tape prior to its admission in evidence and showing to the jury. We have viewed the tape as we did in *Brown* and find that the evidence as to the sale of the clock/radio was relevant. That sale included the showing of the defendant and his cohort coming into the building, Hoskins carrying in the clock/radio and placing it on the counter, the subsequent payment to defendant, and no payment to Hoskins. The cornerstone of defendant's argument was that Hoskins alone carried in the clock/radio and discussed its theft. Defendant's counsel implied in cross-examination of Herbert and Sisco that since defendant did not carry the clock into the store, there was no real showing that he was in any way connected with the clock or its burglarious stealing. The entire tape was relevant, including that portion subsequent to the payment of the defendant, to refute defendant's implied contention that the payment he received was not for the clock. The entire tape revealed only one payment

which was made to the defendant. The jury could infer from an entire showing of the tape that the sole payment to the defendant must have included payment for the clock and therefore that he participated in its burglarious stealing. Only by showing the entire tape would the jury be able to discern that no other payment was made to Hoskins. As in *Brown*, we believe editing the objected to portions of the tape would have left it so fragmented and piecemeal as to render it useless to the prosecution.[1] The deletion of any part would have weakened the state's proof as to the only payment being to defendant. We find no abuse of discretion by the court in the failure to separate evidence of other crimes and the admission of the entire tape.

Judgment of trial court affirmed.

DOWD, P. J., concurs.

CRIST, J., concurs in separate opinion.

JAMES D. CLEMENS, Senior Judge, dissents in separate opinion.

CRIST, Judge, concurring.

I concur with the majority opinion. However, I believe the admissions of the defendant and his cohort that:

"(1) they had just 'lined up' a boat and motor and it would be 'for sale'; (2) the night before they had forcibly 'ripped off' a television set by assaulting the owner; (3) they had just 'cased' a bank where office machines could be stolen; (4) they had a ten-year-old car and tires and a battery charger for sale; (5) they 'got' another old car the night before; (6) also, they 'could get' a late model Cadillac."

are admissible for another reason. Such admissions tend to prove defendant was guilty of stealing the clock/radio. It points to a course of conduct so intertwined that it is relevant to the stealing of the clock/radio.

The defendant and his cohort were talking to a fence. Defendant presented a clock/radio to the fence for sale. During this conversation, defendant and his cohort discussed other items acquired, or to be acquired, illegally, which they would bring in for sale to the fence. The entire subject matter of the conversation dealt with items to be sold to the fence. The method of acquisition of other items to be sold raised a reasonable inference that the manner of acquisition of all items discussed was the same—theft. A permissible inference was raised that defendant and his cohort used the same method to acquire the clock/radio as was, or would be, used to acquire other items to be brought into the fence. The fencing operation with defendants was a continuing activity. The admissions were relevant to prove the crime in question. *State v. Trice*, 575 S.W.2d 739, 742 (Mo.App. 1978). The admissions had a legitimate tendency to directly establish defendant's guilt of the charge for which he was on trial. There was a common scheme or plan for defendant to burglarize, steal and sell to the fence in question. *State v. Connor*, 585 S.W.2d 294, 299–300 (Mo.App.1979); and *State v. Meek*, 584 S.W.2d 168, 169 (Mo. App.1979).

In *Connor*, a pandering case, there was no error in showing that several weeks prior to the date of the pandering charged, defendant had solicited a male for the purpose of prostitution. The court found "other crimes" of prostitution admissible as showing intent, motive and a common scheme or plan embracing two or more crimes so related to each other that proof of one established the other. The court based its decision upon evidence that defendant worked for Dateline. Dateline's business was prostitution. Crimes relating to this prostitution business were admissible. Likewise, in the case at bar, the admissions relating to the fencing operation are admissible to show a common scheme or plan to burglarize, steal and sell to the fence.

In *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954), cited in both the majority and dissenting opinions, the crime was unrelated in that the proof of an unre-

---

1. While we have viewed the tape, it is impossible to describe all that the exhibit revealed. In fact, even the transcription by the court reporter is inadequate to fully reveal what occurred.

lated holdup had nothing to do with a murder. *Reese,* and related cases, are not dispositive of a fencing operation case like the one in question. The state, in the absence of the admissions contained in the tape, was relying upon the presumption arising from possession of recently stolen property to prove that defendant was the burglar and thief. The admissions created, at least by inference, an additional evidential base to support the change. Such admissions were relevant and that relevance outweighed the prejudice involved.

JAMES D. CLEMENS, Senior Judge, dissenting.

I must dissent. The majority opinion casts aside the just and fundamental principle that a defendant's right to a fair trial requires that evidence of his unlawful conduct be limited to the crime charged—and ignores the principle's corollary that admitting evidence of uncharged and unrelated crimes is prejudicial error. Defendant challenges neither the admissibility nor sufficiency of evidence of the charged crimes. His sole point is that the trial court erred in admitting an audio-visual recording of his statements about other crimes—later thefts unrelated in either place or time to the burglarious theft charged.

Victor J. Herbert, an undercover police officer who had posed as a "fence" for stolen property, testified that three weeks after the charged burglary defendant, along with co-indictee Hoskins, "sold" him the stolen clock-radio, along with a portable television set and a tool box, for all of which he paid defendant sixty-five dollars. Police Officer Richard Sisco confirmed Herbert's testimony and identified the clock-radio previously described by its owner. Clearly the state made a submissible case of burglary and stealing. Compare *State v. Ryun,* 549 S.W.2d 141[5, 6] (Mo.App.1977).

The state then went further and produced corroborating testimony. Two police officers testified they had surreptitiously photographed and recorded the actions and conversations defendant and Hoskins had with police officers Herbert and Sisco.

Over defendant's objection the sound film was then received in evidence. It showed defendant standing near the stolen radio, but the conversations do not mention it. By pictures and spoken words the film showed Officer Herbert paying defendant sixty-five dollars, without referring to what the payment was for.

These parts of the filmed evidence were relevant only to confirm Officer Herbert's testimony that defendant had sold him the stolen clock-radio. The following part of the film, however, refers to other unrelated property defendant and Hoskins had stolen after the charged offense, or planned to steal in the future. In this extraneous filmed conversation defendant, or Hoskins, said: (1) they had just "lined up" a boat and motor and it would be "for sale"; (2) the night before they had forcibly "ripped off" a television set by assaulting the owner; (3) they had just "cased" a bank where office machines could be stolen; (4) they had a ten-year-old car and tires and a battery charger for sale; (5) they "got" another old car the night before; (6) also, they "could get" a late model Cadillac. The sound film has no verbal statement about either the charged burglary or the stolen clock-radio.

The only possibly relevant portions of the challenged film are those tending to confirm Officers Herbert's and Sisco's direct testimony about defendant's joint possession and "sale" of the stolen clock-radio.

I now consider the claimed error of showing the entire film. As noted, the challenged portions concern two thefts defendant had made fifteen days after the charged burglary and four planned future thefts.

These portions of the film—as acknowledged by the majority opinion—came after the relevant, incriminating statements confirming the police testimony that defendant had stolen and sold them the clock-radio.

I see no reason the film could not have been edited by cutting out everything except those relevant portions showing defendant with the stolen radio and being paid sixty-five dollars for the loot.

In dealing with a confession containing recitals of an extraneous crime our Supreme Court held in *State v. Wolff*, 337 Mo. 1007, 87 S.W.2d 436[3, 4] (1935): "[W]hen the part bearing on the issue [of the crime charged] can be separated from the parts relating to other offenses only that part material to the issue is admissible." Here, the challenged part of the film was irrelevant to the charged burglary; it pictured defendant as a professional thief. However true, that evidence was irrelevant and deprived defendant of a fair trial. This conclusion accords with a long line of Supreme Court cases reversing convictions for admitting evidence of other, unrelated crimes.[1] They hold the state may introduce evidence of other crimes only when it tends to directly establish guilt of the charged crime, and the state carries the burden of establishing that relevance. The cases hold that absent clear relevance, admitting evidence of unconnected crimes is reversibly erroneous because of its dangerous impact on a jury. And, such evidence is patently irrelevant and hence prejudicial where the other crimes were, as here, committed after the charged crime.

I would hold that the challenged film evidence of two other crimes committed after the charged burglary and four future crimes being planned was inadmissible because it did not logically tend to prove the offenses on trial. It was prejudicial because, as said in *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304[1] (1954), it had the inevitable tendency to raise a legally spurious presumption of guilt in the minds of the jurors.

In reaching this conclusion I have considered our recent opinion in *State v. Brown*, 584 S.W.2d 413 (Mo.App.1979) and find no conflict. There, the defendant was charged with robbery. He had attempted to sell the victim's credit cards through "police-maintained undercover 'fencing' operation." On sound film defendant explained "how he happened by these items"

and "in so explaining mentioned his involvement in [other] criminal activities." In upholding admission of that challenged film we concluded that to "edit those objectionable portions . . . would have left the tape so fragmented and 'piecemeal' as to render it useless . . . and . . . amounted to its rejection." Not so here. As said, the only relevant portions of the film at one place showed defendant with the stolen radio and at another showed him being paid sixty-five dollars. The following parts of the film were not, as in *Brown*, "intricately woven in" with the crime charged. Here, as ruled in *Wolff, supra*, the trial court should have ordered the two relevant portions excised for viewing and excluded the rest of the tape.

The majority opinion quotes from but does not follow oft-quoted, landmark case of *State v. Reese, supra*, about the state's burden of overcoming the "dangerous tendency" of evidence of unrelated crimes. *Reese* was followed in *State v. Holbert*, 416 S.W.2d 129[6] (Mo.1967), reversing a conviction and adding: "But the dangerous tendency and the misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny." And, in *State v. Hancock*, 451 S.W.2d 6[2] (Mo.1970), the court held the rule admitting evidence of even a related crime "cannot extend to the situation here when the commission of the burglary charged was necessarily a completed transaction separate and apart from the commission of a burglary or unlawful breaking two blocks distant."

The majority opinion in its last paragraph, upholds the evidentiary admission of the entire tape on a ground I consider specious. It refers to testimony that Hoskins, not defendant, carried the stolen clock-radio to the "fence" and discussed its theft. Not by evidence, but only by cross-examination and jury argument did defense counsel imply payment to defendant was not for the

---

1. *State v. Holbert*, 416 S.W.2d 129[2–6] (Mo. 1967); *State v. Hancock*, 451 S.W.2d 6[2] (Mo. 1970); *State v. Tillman*, 454 S.W.2d 923[5, 6] (Mo.1970); *State v. Boyer*, 476 S.W.2d 613[1] (Mo.1972); *State v. Hudson*, 478 S.W.2d 281, l. c. 282 (Mo.1972); *State v. McKnight*, 486 S.W.2d 415[3, 4] (Mo.1972).

stolen clock-radio. Here there was no defense testimony and this court's interpretation of the transaction bases the relevancy of the entire tape on cross-examination, and jury argument, not on evidence. Assuming *arguendo* that this tended to make the entire tape relevant, that contention must be weighed against its patently prejudicial effect in showing the six unrelated crimes. As I read the oft-cited case of *Reese, supra,* quoted in the majority opinion, the decision to admit evidence of other crimes must be based on "rigid scrutiny" to avoid "[the] spurious presumption of guilt in the minds of the jurors" and unless the court "clearly perceive(s) the connection between the extraneous criminal transaction and the crime charged . . . the accused must be given the benefit of the doubt, and the evidence should be rejected." The majority opinion does violence to the bed-rock principle declared in *Reese,* and a host of cases following it, that a defendant is entitled to be tried only for the crime charged.

Since I believe evidentiary admission of other, unrelated subsequent crimes deprived defendant of a fair trial I would reverse and remand for a new trial.