STATE of Missouri, Respondent,

v.

Roger John JOHNSON, Appellant.

No. 41152.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 6, 1980.

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

John Ashcroft, Atty. Gen., Paul Robert Otto, Lisa M. Camel, Asst. Attys. Gen., Jefferson City, Timothy J. Patterson, Pros. Atty., Hillsboro, for appellant.

Theodore Guberman, Public Defender, Hillsboro, for respondent.

GUNN, Presiding Judge.

Defendant was convicted of first degree murder, § 559.009, RSMo Supp.1975 [1], and first degree robbery, § 560.120, RSMo 1969. He was sentenced on the murder charge to life imprisonment, not eligible for parole for 50 years. Section 559.011, RSMo Supp.1975. A concurrent life sentence was imposed for the robbery conviction. His appeal raises four points of alleged error: (1) certain photographs introduced and received in evidence constituted improper hearsay evidence of a testimonial act; (2) defendant's statement to police that he was "on the run from the Penitentiary" was improperly admitted into evidence as bearing on another crime; (3) the state failed to prove the elements of first degree murder; (4) that the 50 year minimum sentence without probation or parole is constitutionally repugnant to the statute on parole, § 549.261, RSMo 1969. We find no reversible error and affirm the judgment.

The date of the killing was November 9, 1976. Hence, we follow the statutory law in effect on that date.

The evidence supporting defendant's conviction is overwhelming. His video confes-

---

1. So labelled by *State v. Duren*, 547 S.W.2d 476 (Mo. banc 1977).

sion presents a tragic picture and a brutal murder. One of sixteen children borne by his mother, defendant was nineteen years of age at the time of the killing. He had already been twice convicted of armed robbery in 1974 and was a fugitive from justice.

The killing took place around 4:00 a. m. in a backwoods area of Jefferson County. Most of the previous day, night and early morning, the defendant, his brother and a whilom companion, Bernard Jolly, had been drinking and driving desultorily in the general vicinity of DeSoto in Jefferson County. In the early morning hours as the three were obtaining gasoline for their auto from a service station, the decision was made to rob it. Bernard Jolly utilized a knife to accomplish the robbery of the station's money supply, although the station's attendant offered brief resistance. The attendant, James DePriest, was subdued after a brief scuffle with the defendant and the money and a gun found in the station were confiscated by the intruders. The hapless Mr. DePriest was abducted as hostage with the defendant driving the getaway auto. After a few miles driving, the defendant stopped and ordered Mr. DePriest out. According to defendant, as Mr. DePriest was exiting from the back seat on the right side of the auto he tried to strike the defendant with a beer bottle but was thwarted in his effort by hitting the dome light of the car causing the bottle to shatter. Defendant then placed three neatly directed shots in the back of Mr. DePriest's head within an area of about one and one–half inches, thus bringing Mr. DePriest's life to an abrupt and pitiful end. Defendant and his accomplices then proceeded toward defendant's home, stopping only briefly on Vineland Road as it crossed Vineland River or Big River for him to throw the murder weapon into the water.

■ The state, over objection, introduced a photograph of defendant's brother pointing down to the river, ostensibly indicating the location where the murder weapon had been thrown. This is the substance of defendant's first point on appeal. Defendant argues "that the photograph depicted a testimonial act by defendant's brother and was therefore hearsay".

It was the defendant's own video taped statement which led police to the place where the gun was recovered. The confession states that defendant drove down Vineland Road, stopped at the river and threw the gun in the water. The police officer who made the recovery testified that he had gone to Vineland Bridge and was able to see the weapon laying in the water; that he waded into the stream and retrieved the gun. The gun was readily visible and retrieved by the police officer through his own observation without the aid of the brother. Assuming the photograph had been inadmissible, there was an abundance of proper evidence, including defendant's own statement, which gave direction to the location of the gun. Thus, any error in admitting the photograph was harmless and cumulative to other evidence proving the issue. *State v. Fingers*, 564 S.W.2d 579, 583 (Mo.App.1978); *State v. Starkey*, 536 S.W.2d 858 (Mo.App.1976); *State v. Mills*, 521 S.W.2d 495 (Mo.App.1975).

■ During his taped confession, defendant offered that he was initially reluctant to rob the station as he "was already on the run from the Penitentiary and didn't want cops after me and no trouble". Defendant contends that the statement should not have been admitted as being immaterial and an inadmissible comment on another unrelated crime.

■ Defendant's argument is destitute of merit. His statement was palpably voluntary. It was also intended by defendant as a palliator by way of explanation for a macabre evening. It also corroborated the unobjected to testimony of the arresting officer of what defendant had related shortly after he had been taken into custody–that he attempted to place the blame of the night's gruesome occurrences on Bernard Jolly, claiming that Jolly had initiated all the action leading to the robbery. Supposedly, defendant had merely been caught up in the frenzy of the sordid happenings and had not been a willing participant at

any time for he was already in enough trouble. As such, the statement made by defendant was an integral part of the entire episode and was thereby relevant. *State v. Powell*, 595 S.W.2d 13 (Mo.App. 1979); *State v. Brown*, 584 S.W.2d 413 (Mo. App.1979).

Furthermore, the issue is not truly preserved for appeal. Not only was there lack of objection to the arresting officer's testimony regarding defendant's statement as to being on the run from the penitentiary, neither was there objection made to the video taped statement at trial, though a motion in limine had been raised and denied. *State v. Johnson*, 586 S.W.2d 437 (Mo.App.1979).

◼ Next, defendant asserts that there was insufficient evidence of cool reflection and deliberation to support a first degree murder conviction. According to defendant, as he and Mr. DePriest were alighting from the auto, the victim swung a beer bottle striking the dome light and shattering the bottle. Defendant claims that he shot randomly in the dark to protect himself. But the state's evidence renders defendant's account manifestly doubtful, and the jury could well find all the elements of first degree murder as set forth in § 559.-005, RSMo Supp.1975.

According to defendant's version of what occurred Mr. DePriest was exiting from the right rear side of the auto about the time defendant was leaving the opposite side from the driver's seat. Jolly was positioned in the back seat next to DePriest and was following him out of the auto. It is at this point that defendant suggests that Mr. De-Priest swung the beer bottle which was broken as it struck the auto dome light. In order to strike defendant, Mr. DePriest would have had to have reached over Jolly from the right rear side of the auto as defendant was leaving the driver's seat. Allegedly to protect himself, defendant then fired three wild and aimless shots in the dark in the general direction of Mr. DePriest. How he could miss hitting Jolly who was between defendant and Mr. DePriest in that circumstance would be indeed

remarkable. Belying the bottle swinging incident was the fact that no bottles or glass were found in the area where the killing occurred, nor was there any glass in defendant's auto; the dome light was also fully intact.

The jury may, of course, reject defendant's explanation of the events, which they obviously did in this case. *State v. Jackson*, 578 S.W.2d 326 (Mo.App.1979).

◼ As to first degree murder, the jury had for its consideration the fact of three neatly placed bullet holes in a tightly circumscribed space of one and one–half inches in the back of Mr. DePriest's head—an amazing demonstration of accurate shooting from which the jury could conclude that the victim was ruthlessly killed in a cold and deliberate manner while at the mercy of a merciless assailant. A bullet which had penetrated the victim's head was found under his face as his body lay face down on the ground. The necessary elements of proof for first degree murder under § 559.005, RSMo Supp.1975, were fully present. *State v. Thomas*, 595 S.W.2d 325 (Mo.App.1980).

◼ Finally, defendant argues that the limitation on probation or parole in § 559.-011, RSMo Supp.1975, violates Mo.Const. Art. III, § 28 as an impermissive amendment by implication to § 549.261, RSMo 1969, which provides for parole under certain conditions. *State v. Olinghouse*, 605 S.W.2d 58 (Mo. banc 1980), precisely and concisely rejects this issue as follows:

Appellant also contends that the above enactment [§ 559.011, RSMo Supp.1975] was violative of Section 28 of Article III, Constitution of Missouri, in that the limitation upon parole in the event of a life sentence for capital murder had the effect of amending Section 549.261, RSMo 1969, pertaining to the State Board of Probation and Parole, but that that section as amended, was not set forth in the bill. Amendments by implication are not subject to the constitutional limitation here invoked. *State ex rel. McNary v.*

*Stussie*, 518 S.W.2d 630, 635[2] (Mo. banc 1974).

Judgment affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.