**STATE of Missouri, Plaintiff-Respondent,**

v.

**Gerald SILVERS, Defendant-Appellant.**

**No. 14951.**

Missouri Court of Appeals, Southern District, Division Two.

July 14, 1987.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 4, 1987.

William L. Webster, Atty. Gen., Donna Richards-Crosswhite, Deborah L. Ground, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Susan L. Hogan, Columbia, for defendant-appellant.

PREWITT, Presiding Judge.

Following jury trial defendant was convicted of second-degree burglary and sentenced to a term of seven years' imprisonment. He appeals, claiming six points of trial error.

The first point we discuss is defendant's contention that the trial court erred in not directing a judgment of acquittal because there was insufficient evidence to support the conviction. In reviewing to determine if a submissible case was made, we accept as true all evidence favorable to the state, including all reasonable inferences drawn from that evidence, and disregard evidence and inferences to the contrary. *State v. Molkenbur*, 723 S.W.2d 894 (Mo.App.1987). So viewed, the evidence establishes the following:

Charles Johnson lived in a house on Route 1, Moundville. On January 7, 1984, he left the house at approximately 10:30 a.m. When he left the front door to the house was locked and all lights turned off. He did not return to that area until approximately 8:20 p.m. that day, when he went to his parents' home approximately ½ to ¾ of a mile from his house. Shortly after he got to his parents' home he was working in their yard when a car traveled past his parents' house. A few minutes later he saw it traveling down the road on which he lived. Johnson saw the car approach his house and pull into his driveway.

Johnson then obtained a .22 caliber rifle from his parents' house and drove in their car to his house. As he approached he noticed that the lights were on and the front door was open. Johnson pulled in his driveway and stopped. The other car then approached from the yard area and stopped approximately six to eight feet from Johnson. Two men got out of the passenger side of the car and as Johnson was getting out, one of them said, "What can I help you with?" Johnson responded, "Hold it right there. I've got a gun."

One of the men then grabbed his stomach, "kind of moaned" and bent over like he was sick. He started toward Johnson and Johnson fired a "warning shot" into the air. Johnson then told the men to "Lie down on the ground and get everyone out of the car", but he was ignored. Johnson then fired again and hit the car. The man who had bent over continued toward Johnson and grabbed for the gun. Johnson fired again, hitting the man in the stomach.

Johnson identified defendant as the man who had gotten out of the car but was not shot. Defendant and a woman who had been in the driver's seat helped the wounded man into the car. Johnson started his parents' car and backed into the road. The other car pulled out of the driveway and headed north. Johnson followed the car to Highway KK, then east on KK to the Highway 43 intersection. The car then proceeded on a gravel road and Johnson turned left on Highway 43 to go to the sheriff's office in Nevada.

After Johnson returned home from the sheriff's office, he found that the front door of his house had been kicked in and a

television was missing. The television was later found by Richard Chrisenbery between 8:30 and 8:40 p.m. that evening. Chrisenbery found it and other items lying in a ditch along the gravel road where Johnson had last seen the car that defendant had been in at his house. Chrisenbery had driven the same road on his way to Nevada at 7:00 p.m. and the items were not there then.

Defendant was arrested in Kansas on January 9, 1984. At that time there was a bullet hole in the lower left hand side of the windshield of defendant's car. Johnson identified a photograph of defendant's car as the car he saw at his house. On January 10, 1984, defendant told a deputy sheriff that he did not kick the door of Johnson's house in, "must of been Melvin my brother." On January 12, 1984, he told the deputy that he threw some things out of his car after his brother got shot but that he "don't remember where they came from." He said his wife was driving his car at the time. When asked if he broke into the Johnson house he said, "I think Melvin did." On January 11 he told the sheriff of Vernon County that they were lost and decided to turn around at the Charles Johnson residence. He told the sheriff that he couldn't show him on a map where the items thrown out with Johnson's television came from, "but I know we were in a couple of places."

■ Defendant contends that this evidence was insufficient since it merely established defendant's presence at the scene, that he was never found in possession of any property stolen from Johnson's residence and his statements indicated he had been drinking heavily and could not remember the details of the incident. As defendant's able counsel points out, mere presence at the scene plus flight will not sustain a conviction without evidence of active participation in the offense. See *State v. Dudley*, 617 S.W.2d 637, 639 (Mo. App.1981).

■ However, here there was evidence of active participation. Defendant was present at the scene shortly after the break-in and admits that he threw some of the items out of the car. Even if defendant did not enter the premises, the jury could find he was knowingly aiding his brother by allowing the use of his car to assist him in burglarizing Johnson's house. His acknowledgment that they were in "a couple of places" from which they had goods which they had thrown away is an indication that they were in there illegally and shows that they were following a pattern of burglary. Johnson's house appeared to be one of the places that fit that pattern. A submissible case was made. This point is denied.

The next point we discuss is defendant's contention that certain statements he made to the sheriff and deputy were given in violation of his right to counsel and his right not to incriminate himself, as guaranteed by the fifth and fourteenth amendments of the United States Constitution and Article I, §§ 18(a) and 19 of the Missouri Constitution. Defendant claims that the statements were made after he had refused to say anything further without his lawyer present and that his "asking to speak with Sheriff Gast and Deputy Volkman, did not indicate a willingness to discuss the offense charged, but rather sought only to be allowed to speak with his wife and to express his medical concerns".

The record shows that on January 10 defendant, after having been read his *"Miranda"* rights, made certain statements to Deputy Sheriff Volkman, then said, "If you bring my lawyer here I'll tell you the places I got into." The deputy then ended the interview. The deputy testified that two days later he was told by the jailer's wife that defendant wanted to see him. When he went to the jail the defendant told him he "wanted to talk about the case with me." The deputy testified that he again read defendant the Miranda Warning. The deputy said then he asked him what he wanted to talk about and defendant asked if he could see his wife. The deputy replied, "I think so." The deputy then inquired, "Do you want to tell me about some of the places you been into?" And defendant replied, Well, "I have only been in three or four places in that area."

The sheriff said that he interviewed defendant only because defendant asked to see him or one of the deputies and he happened to be at the jail when that occurred. He said that he gave defendant the *"Miranda* warning rights" and defendant said he understood those rights.

■ A request for counsel bars further interrogation until an attorney is present unless in the interim the defendant voluntarily initiates the discussion. *State v. Bannister,* 680 S.W.2d 141, 147–148 (Mo. banc 1984), cert. denied, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). The trial court apparently found that the defendant had initiated the further discussions regarding the break-in at Johnson's house. Here, by initiating further discussions defendant relinquished his right to remain silent and voluntarily gave the statements. Compare *State v. Bannister,* supra, 680 S.W.2d at 147–148. This point is denied.

The next point of defendant that we discuss is his contention that the trial court erred in overruling his objections to certain evidence. He claims it was inadmissible because it constituted evidence of other crimes not related to this case and the probative value thereof was clearly outweighed by its prejudicial effect.

Defendant complains that Johnson was allowed to testify that his home had been broken into three times in the previous two years. There was not any evidence or even any inference that defendant had participated in those break-ins.

■ Evidence of other crimes is admissible "in support of such issues as 'motive, intent, the absence of mistake or accident, common scheme or plan ..., or the identity of the person charged....' " *State v. Collins,* 669 S.W.2d 933, 936 (Mo. banc 1984). However, in order to invoke the rule of exclusion of evidence of other crimes there must be evidence the defendant committed, has been accused of, charged with, convicted of, or definitely associated with the other crime or crimes. *State v. Jones,* 523 S.W.2d 152, 155 (Mo.App.1975). Here, there was no such evidence and the testimony was offered only to explain why Johnson got a gun and investigated when

he saw the car approach his house. The admission of that evidence was not error. Cf. *State v. Hawkins,* 679 S.W.2d 894 (Mo. App.1984); *State v. Jones,* supra.

Defendant also complains of the part of his statements to Deputy Volkman that he had been into "three or four" places in the Golden City area that evening. The evidence indicated that defendant and his brother were driving around rural areas breaking into unoccupied houses. This is revealed by his confession and the items found at the side of the road with the television.

■ Evidence of other crimes is admissible to prove the specific crime charged when it tends to establish, among other things, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one of them tends to establish the other. *State v. Reilly,* 674 S.W.2d 530, 533, 534 (Mo. banc 1984). See also *State v. Alexander,* 693 S.W.2d 216, 220 (Mo.App.1985). The evidence of the other break-ins was admissible as it showed a common scheme and indicates that defendant participated in breaking into Johnson's house.

■ The part of defendant's statement complained of was also admissible as it would have been difficult to have separated it and made the statement understandable without that part. Evidence contained in a statement is admissible if necessary for a clear understanding of the statement. *State v. Bellew,* 612 S.W.2d 401, 403 (Mo. App.1981); *State v. Brown,* 584 S.W.2d 413, 415 (Mo.App.1979). What may be considered reasonably separable is left to the sound discretion of the trial court. Id.

Defendant's remaining contention under this point is that the trial court erred in permitting testimony that Richard Chrisenbery had found various items along the gravel road with Johnson's television. As stated above, this evidence was admissible as it showed a common scheme or plan of breaking into unoccupied houses in the rural area and tends to show that defendant was guilty of the break-in at Johnson's house. This point is denied.

Defendant contends the trial court erred in denying his various motions for mistrial because he was deprived of his due process right to a fair trial as guaranteed by the fifth and fourteenth amendments to the United States Constitution and by Article I, Section 10 of the Missouri Constitution because the prosecuting attorney improperly injected unfair insinuations throughout the trial by expressing his belief that appellant and his brother burglarized Johnson's home, by arguing at the bench in a voice loud enough for the jury to hear, and by attempting to elicit hearsay testimony from the sheriff after objections to such testimony had been sustained. We do not find that this conduct was such that it would require a mistrial.

The prosecutor asked Johnson if certain photographic exhibits were "fair and accurate portrayals of the way your house looked on January 7th after the Silvers broke into it?" The trial court sustained defendant's objection and offered to instruct the jury to disregard it but denied his request for a mistrial.

Twice during a conference that was to be outside the hearing of the jury the trial court admonished the prosecuting attorney to keep his voice down. The record does not indicate that what the prosecuting attorney said, even if heard by the jury, would have been prejudicial to defendant.

During the sheriff's testimony the prosecutor asked questions regarding the identification of ownership of other items found with Johnson's television. The trial court sustained appellants' objections to the questions.

■■■ Mistrial is a drastic remedy to be employed only where prejudice cannot be removed. *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983). The trial court is in a better position than an appellate court to determine the prejudicial effect on the jury. *Id.* An appellate court will not interfere with the trial court's exercise of discretion to grant a mistrial absent a manifest abuse of that discretion and a real possibility of prejudice to the defendant. *State v. Cooper*, 708 S.W.2d 299, 304 (Mo. App.1986). We find no abuse of discretion here. The point is denied.

■■ We next discuss defendant's contention that the trial court erred in giving an instruction following MAI–CR2d 2.20 because it defines proof beyond a reasonable doubt as proof that leaves the jury "firmly convinced" and thereby diminishes the meaning of proof beyond a reasonable doubt. In *State v. Pendergrass*, 726 S.W.2d 831, 833–834 (Mo.App.1987), this district found that such an instruction was not prejudicial. We reach the same conclusion here. This point is denied.

■■ Defendant contends in his remaining point that the trial court erred in giving an instruction which allowed the jury to find defendant guilty if it believed that he had acted with or aided his brother Melvin Silvers in committing the offense. The relevant portion of that instruction is set forth below.*

Melvin Silvers had been acquitted of the break-in. Defendant sought to introduce evidence of that acquittal but it was not allowed.

---

\* A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on January 7, 1984 in the County of Vernon, State of Missouri, the defendant knowingly entered unlawfully in an inhabitable structure located at 2 miles west and ½ mile south of the junction of KK and 43 Highway and owned by Charles Johnson, and

Second, that defendant did so for the purpose of committing the crime of stealing therein, then you are instructed that the offense of burglary in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of burglary in the second degree, the defendant acted together with or aided Melvin Silvers in committing that offense,

then you will find the defendant guilty of burglary in the second degree.

Defendant recognizes the rule that it is no defense to a prosecution for an offense in which the criminal responsibility of the defendant is based upon the conduct of another that such other person has been acquitted. See § 562.046, RSMo 1986. He further acknowledges that a person can be criminally responsible for the conduct of another when he aids in planning, committing or attempting to commit the offense. See § 562.041.1(2), RSMo 1978.

Defendant contends, however, that as the state was allowed to introduce evidence that Melvin Silvers was participating in the burglary and that defendant was with him, by naming Melvin in the instruction the court allowed the jury to believe that Melvin was guilty of burglary. Defendant claims that by preventing him from presenting evidence of Melvin's acquittal it unfairly placed him "in a position of being deemed guilty by association, although the person appellant was associated with had been acquitted."

That Melvin Silvers was acquitted does not mean he did not participate in the burglary. Evidence, such as defendant's statements, may have been presented in this case that was not present in Melvin Silvers' case. As defendant correctly noted, Melvin's acquittal is no defense in this situation. § 562.046, RSMo 1986. Whether or not Melvin Silvers was found guilty, under the evidence here the state was entitled to submit an instruction for the jury to determine whether defendant acted with or aided Melvin Silvers in committing the offense. This point is denied.

The judgment is affirmed.

HOGAN, FLANIGAN and MAUS, JJ., concur.