Accordingly, the judgments of the district court will be affirmed in both of these appeals.

**UNITED STATES of America**

v.

**Egidio CERILLI, Ralph Buffone, Maylan Yackovich, John Shurina, Appellants.**

No. 77–1200.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 17, 1977.

Decided July 15, 1977.

Blair A. Griffith, U. S. Atty., Daniel H. Shapira, James J. West, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Thomas R. Ceraso, Greensburg, Pa., Irving M. Green, New Kensington, Pa., Dominic Ciarimboli, Greensburg, Pa., for appellants.

Before VAN DUSEN, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

This is an appeal primarily arising out of the declaration of a mistrial in a criminal proceeding. The defendants proffer three issues for our consideration: whether the issuance of a second indictment against the defendants violates the Double Jeopardy Clause; whether the prosecution engaged in misconduct which precludes the possibility of a fair trial; and whether a trial under the second indictment is barred by the statute of limitations. However, as a threshold matter, we must first decide whether this Court has jurisdiction, at the present time, to consider any of the points pressed by the defendants.

## I.

On February 25, 1976, defendants Cerilli, Buffone and Yackovich were indicted for conspiracy and substantive violations of the Hobbs Act. All three men are high-ranking officials of the Pennsylvania Turnpike Commission, and it is alleged that they had demanded and obtained money from persons who leased equipment to the Commonwealth by the wrongful use of fear and under color of official right.

A trial commenced in late April of 1976 and took place over a three-week period. On May 17, 1976, the district judge charged the jury, and the deliberations then were initiated. Shortly thereafter, the judge was informed that one of the jurors had taken ill. Such juror was examined first by a nurse and then by a physician at a nearby hospital emergency room. The district court consulted with the medical personnel, and the juror then was hospitalized.

As a result of this development, the trial judge gave defense counsel the choice of proceeding with eleven jurors or moving for a mistrial. Also, the defense attorneys were asked if they would stipulate that the ill juror could rejoin his colleagues if and when he sufficiently recovered. But the defendants and their attorneys opted for a mistrial.

Immediately prior to and following the declaration of the mistrial, the proceedings received extensive press coverage in Pittsburgh and throughout Pennsylvania. Interviews were conducted with many of the principals in the case, including an interview with one Assistant United States Attorney who voiced his disappointment in the mistrial and who indicated that the case would be retried.

On May 21, 1976, the government filed a motion to reconvene and poll the jury, claiming that "prior to the separation of the ill juror, the jury had unanimously agreed on a verdict as to several counts of the indictment." Such motion was asserted in anticipation that partial verdicts might be entered. On May 25, however, the trial court denied the motion to reconvene and poll the jury. The press reported, in considerable depth, the events surrounding the motion to reconvene.

Not content to leave all post-trial maneuvering to the government, the defendants presented a motion for a judgment of acquittal on May 24 and, in July of 1976, also moved to dismiss the indictment or at least to secure a change of venue because of the extensive publicity that had been accorded the proceedings.

A "superseding" indictment was filed on August 5, 1976, which named a new defendant (Shurina) and listed six additional substantive counts. One admitted purpose of this second indictment was to counter court rulings in the original trial that had excluded evidence of similar acts of alleged corruption on the part of the defendants, acts which the government had desired to introduce on issues such as motive, intent and preparation. In the view of the district judge, such similar acts should have been set forth in the initial indictment, and he was unwilling to permit a constructive amendment of the indictment by admitting such evidence.

The defendants' request for acquittal was denied on August 13. But, on August 24, the defendants filed another motion to dismiss the charges against them or to obtain a change in venue. The motion to dismiss rested, in part, on the premise that any proceedings based on the superseding indictment would impermissibly expose the defendants to double jeopardy. On January 25, 1977, and after a hearing, the dismissal motion was rejected by the district judge. However, he reserved decision respecting the venue issue until the *voir dire* for the retrial was completed.

On February 2, 1977, the defendants filed an appeal from the denial of their motion to dismiss. At that juncture, the government moved to quash the appeal on grounds that there was no final appealable order. Such motion and the case as a whole were referred to this panel for disposition.

## II.

■ Our first responsibility is to decide whether the denial of the defendants' motion to dismiss the indictment on double jeopardy grounds constitutes a "final decision" within the meaning of 28 U.S.C. § 1291 so as to be immediately appealable.

This jurisdictional issue recently was decided by the Supreme Court in *Abney v. United States.*[1] In that case, in which the defendants challenged a retrial on double jeopardy grounds, the Court ruled that an order rejecting a motion to dismiss an indictment was a final decision for purposes of § 1291 and, therefore, was appealable.

The reasoning underlying the *Abney* decision is twofold: First, the denial of a dismissal motion against double jeopardy claims falls within the "collateral order" exception to the final judgment rule.[2] This is so since such an order constitutes a complete, formal and final rejection of an accused's double jeopardy arguments, the very nature of which are collateral to and separable from the fundamental issue of guilt or innocence. Second, to postpone appellate review of double jeopardy claims until after conviction and sentencing would, the *Abney* Court declared, undermine the rights conferred on an accused by the Double Jeopardy Clause, as that Clause not only insulates an individual from double punishment but also protects him from being twice put to trial for the same offense.

In view of *Abney*, then, the denial of the dismissal motion in the present context, at least insofar as it concerns the defendants' double jeopardy assertions, constitutes a final decision appealable under § 1291.

## III.

■ Even if the defendants' jeopardy claims are now reviewable, it does not follow that their other contentions, relating to prosecutorial misconduct and the statute of limitations, are also appealable at this time.

In *Abney*, the petitioners had appended another question to their double jeopardy

---

1. —— U.S. ——, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

2. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

   The "collateral order" exception to the final judgment rule encompasses:

"that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
*Id.* at 546, 69 S.Ct. at 1225.

arguments—specifically, a challenge to the sufficiency of the indictment. Nevertheless, the Supreme Court ruled that § 1291 did not confer jurisdiction on an appellate court to pass on the "sufficiency" issue, postulating that the district court's refusal to dismiss the indictment because of that secondary problem was not "collateral" in nature but rather went to the heart of matters to be resolved at the imminent trial. The *Abney* Court also posited that the sufficiency of the indictment could be reviewed effectively and, if necessary, corrected if and when a final judgment resulted.

Such reasoning is equally applicable to the "misconduct" and "limitations" questions that the defendants assert here. For both of these issues may be effectively reviewed should a final judgment adverse to the defendants result. Consequently, they do not fall within the ambit of the "collateral order" doctrine.

With respect to the prosecutorial misconduct problem, in particular, we note that the district judge has reserved decision on the requested change of venue. It may be that the trial court will authorize a change in venue in order to insulate the defendants from any prejudicial publicity, prosecutorially induced or otherwise. Or the judge may adopt protective mechanisms in his own courtroom that will suitably protect the defendants as well.

In sum, the only claim that would appear to be reviewable at this time is that pertaining to the alleged violation of the Double Jeopardy Clause.

## IV.

We now turn to a consideration of the question whether the Double Jeopardy Clause would be violated should proceedings pursuant to the second indictment be permitted to continue.

■ Although it is difficult to discern their precise contentions, the defendants, in effect, maintain that, since the original indictment has not yet been formally dismissed, and because jeopardy had attached in the proceedings under that indictment, any prosecution under the subsequent indictment would expose them to double jeopardy.[3] We cannot, however, adopt the position advanced by the defendants.

The Supreme Court's recent opinion in *Lee v. United States*,[4] while not squarely on point, cogently encapsulates double jeopardy precepts which bear on the present inquiry. In *Lee*, decided by an 8–1 majority, the Court reiterated the fundamental rule that "[w]here the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy Clause generally [will] not stand in the way of reprosecution. Only if the underlying error was 'motivated by bad faith or undertaken to harass or prejudice' [will] there be any barrier to retrial . . . ."[5] Put another way, double jeopardy poses no obstacle to a subsequent reprosecution where the prior "proceedings were terminated at the defendant's request and with his consent."[6]

■ In the case at bar, it is clear that the defendants exercised their choice to seek a mistrial. They decided upon such a termination of their trial when the juror became ill during the course of deliberations. In light of the precepts articulated in *Lee* and

---

**3.** Alternatively, the defendants appear to contend that the issuance of the "superseding" indictment necessarily constitutes a dismissal of the original indictment. Continuing this line of reasoning, they claim that, because jeopardy attached under the first indictment, and as the first indictment has, in effect, been dismissed, no prosecution is possible under the second indictment or, presumably, under any other one.

The defendants' argument in this regard is not convincing, especially in the absence of any authority for such a theory. As we understand

it, there are two pending indictments against the defendants, and the government may select one of them with which to proceed to trial. *See* cases cited in note 8 and accompanying text *infra*.

**4.** —— U.S. ——, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).

**5.** *Id.* at ——, 97 S.Ct. at 2147.

**6.** *Id.*

its predecessors,[7] such consent removes any barrier to a reprosecution, whether under the original indictment or under a new one.

Where a mistrial is predicated on prosecutorial bad faith or overreaching, as noted in *Lee*, a reprosecution, of course, may be prohibited. Here, however, there are no allegations or suggestions that the declaration of a mistrial rested upon prosecutorial misconduct. Rather, it is manifest that the basis for the mistrial was the illness of a juror, a factor outside the control of the parties to the proceeding. Although there are claims that the prosecution has engaged in various improprieties, the fact remains that the underlying source of the mistrial was not tainted by any overreaching, prosecutorial or otherwise.

■ We recognize that this case is somewhat unusual because there are two outstanding indictments. Ordinarily, the prosecution would proceed under the original indictment, if it retains vitality, or else would secure another indictment. Nonetheless, it has long been settled that the Double Jeopardy Clause is not abridged where there are two pending indictments, setting forth largely identical charges, against the same defendants.[8] Only where the government attempts to proceed to trial on both indictments does the double jeopardy protection come into play. In the present context, however, there is no indication that the prosecution plans to move against the defendants on both indictments. Accordingly, the Double Jeopardy Clause does not preclude further proceedings against the defendants, even under the "superseding" indictment that has been returned against them.

### V.

The order of the district court denying the motion to dismiss the indictment on double jeopardy grounds will be affirmed.

In all other respects, the appeal will be dismissed for lack of jurisdiction.

---

7. See, e. g., *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

8. See, e. g., *United States v. White*, 524 F.2d 1249 (5th Cir. 1975); *United States v. Ragano*, 520 F.2d 1191 (5th Cir. 1975); *U. S. v. Bowles*, 183 F.Supp. 237 (D.Me.1958); and authorities cited therein. See also *De Marrias v. United States*, 487 F.2d 19 (8th Cir. 1973); *United States v. Wilsey*, 458 F.2d 11 (9th Cir. 1972), and *United States v. Garcia*, 412 F.2d 999 (10th Cir. 1969).