STATE of Missouri, Plaintiff-Respondent,

v.

Lyndall C. SHIVE, Defendant-Appellant.

No. 11991.

Missouri Court of Appeals, Southern District, Division One.

Sept. 22, 1981.

Motion for Rehearing or Transfer Denied Oct. 23, 1981.

Application to Transfer Denied Dec. 14, 1981.

James A. Miller, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury in Greene County found defendant guilty of stealing, (Sec. 570.030),[1] and the trial court, finding defendant to be a persistent offender, imposed a sentence of 15 years. Defendant appeals.

Defendant's first point is that the trial court erred in denying his motion to dismiss for lack of jurisdiction for the reason that other criminal proceedings, instituted against defendant in Lafayette County, were a bar to the Greene County action under the double jeopardy provisions of the U. S. Constitution.

On March 9, 1979, two John Deere tractors, three Yazoo mowers and one edger, owned by City Utilities of Springfield, Missouri, were in a locked warehouse in Greene County. On March 12, 1979, city employees discovered that the warehouse had been

---

1. Unless otherwise indicated all references to statutes are to RSMo 1978, V.A.M.S.

forcibly entered and the described equipment stolen.

During 1979 and 1980 undercover officers of the Missouri State Highway Patrol were running a "sting operation" in Lafayette County. Troopers, posing as "fences" for stolen property, conducted this operation in a building, called "H and T Storage," where videotape equipment and microphones were installed.

On March 13, 1979, defendant and one Davis arrived at the storage building with the two John Deere tractors stolen in Greene County. Defendant and Davis sold the tractors to Troopers Hill and Viessman who were acting under cover.

On March 22, 1979, defendant and Davis returned to the building in Lafayette County. On this trip they had with them the three Yazoo mowers and the edger previously stolen. They sold these items to the officers at that time.

In February 1980 criminal charges were filed in Lafayette County against defendant. He was charged with violating Sec. 570.080[2] which deals with receiving stolen property. One of the Lafayette County complaints charged defendant with "disposing" of the tractors on March 13, 1979. A separate complaint charged defendant with "disposing" of the mowers and edger on March 22, 1979. Although both of these Lafayette County cases were dismissed without prejudice on March 5, 1980, on the same date separate indictments were filed against defendant charging the commission of the same "disposing" offenses.

On February 13, 1980, a felony complaint was filed in Greene County charging defendant with the instant offense of steal-

ing. Following a jury trial defendant was convicted and sentenced in the instant proceeding on September 22, 1980. On that date the Lafayette County charges were still pending but there had been no trial, guilty plea or sentence. On October 20, 1980, after defendant had been convicted and sentenced in Greene County, defendant withdrew a plea of not guilty and entered a plea of guilty to the Lafayette County charges and received concurrent six-year sentences.

The state, in response to defendant's first point, takes this position: (a) Under Missouri's Criminal Code, a person may be convicted of both stealing and disposing of the same property and (b) even if double jeopardy prohibited both convictions, this case is unaffected because it is the *prior* conviction. The validity of (b) makes it unnecessary to consider whether (a) is valid.

The Double Jeopardy Clause of the Fifth Amendment to the U. S. Constitution,[3] providing that no person shall "be subject for the same offense to be twice put in jeopardy of life or liberty," applies to the States through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

"Unless there was former jeopardy, there can be no double jeopardy." *People v. Bishop,* 38 Misc.2d 106, 238 N.Y.S.2d 107 (1962). The authorities confirm the accuracy of that statement.

"As an aid to the decision of cases in which the prohibition of the Double Jeopardy Clause has been invoked, the courts have found it useful to define a point in criminal proceedings at which the constitutional pur-

---

2. Section 570.080 reads, in part:

"1. A person commits the crime of receiving stolen property if for the purpose of depriving the owner of a lawful interest therein, he receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen."

3. Art. I, Sec. 19, Constitution of Missouri, providing that "nor shall any person be put again in jeopardy of life or liberty for the same offense after being once acquitted by a jury" does not strictly apply because defendant was

not acquitted by a jury. *State v. Gaskin,* 618 S.W.2d 620, 628 (Mo.1981). As pointed out in *State v. Richardson,* 460 S.W.2d 537, 538 (Mo. banc 1970), however, Missouri enforces the common law rule that no person shall, for the same offense, be twice put in jeopardy. Our supreme court there said, "We find no readily discernible difference between the Fifth Amendment guarantee against double jeopardy and the common law guarantee as applied in this state."

poses and policies are implicated by resort to the concept of 'attachment of jeopardy.' . . . In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. . . . In a nonjury trial, jeopardy attaches when the court begins to hear evidence. . . . The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " (Authorities omitted.) *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).

In *Serfass*, 95 S.Ct. at 1064, the Court reiterated its comment made in an earlier case that "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the double jeopardy clause bars retrial." The Court there said that implicit in that statement "is the premise that the constitutional policies underpinning the Fifth Amendment's guarantee are not implicated before that point in the proceedings at which jeopardy attaches." A corollary to the comment in *Serfass* is the proposition that the conclusion that jeopardy had *not* attached in the Lafayette County actions *ends* the inquiry as to whether the double jeopardy clause barred the Greene County trial.

■ At the time of the Greene County conviction and sentence, the criminal charges in Lafayette County were pending on a plea of not guilty. Jeopardy had not attached to the Lafayette County proceedings.[4] It follows that those proceedings do not constitute *former* jeopardy.[5] Defendant's first point has no merit.

---

4. "Traditionally, the process of arraignment and pleading has not been viewed as amounting to jeopardy. *Collins v. Loisel*, 262 U.S. 426, 429, 43 S.Ct. 618, 619, 67 L.Ed. 1062 (1923). Of course, jeopardy would attach when a plea of guilty is accepted." *United States v. Bullock*, 579 F.2d 1116, 1118 (8th Cir. 1978).

5. *United States v. Central Liquor Co.*, 628 F.2d 1264, 1265 (10th Cir. 1980); *United States v. Cerilli*, 558 F.2d 697, 701 (3rd Cir. 1977); *People v. Shields*, 76 Ill.2d 543, 31 Ill.Dec. 784, 394 N.E.2d 1161 (Ill.1979) cert. den. 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602; *Beard v. State*, 327 N.E.2d 629 (Ind.App.1975); *State v. City*

Defendant's second point is that the trial court erred in denying his motion to suppress certain portions of two videotapes. One tape (State's Exhibit 5) was made on March 13, 1979, and showed the sale of the tractors by defendant and Davis to the two troopers, and the other tape (State's Exhibit 6) showed the sale of the mowers and edger on March 22, 1979. It is defendant's position that the court should have deleted portions of the two tapes containing these statements by defendant: (a) that he had committed offenses other than that for which he was being tried; (b) that he had served five years in the penitentiary; and (c) that he had witnessed "a risque sexual act," which he described.

Exhibit 5, which runs over 35 minutes, and Exhibit 6, which runs over 25 minutes, showed the activities and recorded the conversations of defendant, Davis and the two troopers on the two occasions. This court has viewed both tapes. The early portion of each tape showed the men engaged in unloading the articles which had been stolen in Greene County. On March 22 the goods which defendant and Davis delivered and sold to the troopers included not only the three Yazoo mowers and edger, but also some Case mowers which, according to defendant's taped statements, he and Davis had recently stolen in Columbia. Details of the Greene County thefts and the Columbia thefts were discussed at length and were interwoven. On one tape defendant mentioned, only briefly, the fact that he had served five years in prison.

The trial court held a hearing on defendant's pretrial motion to suppress the at-

---

*Court of City of Lafayette*, 230 N.E.2d 776, 778 (Ind.1967); *State v. Evans*, 248 N.W.2d 521, 524 (Iowa 1976); *Terry v. Commonwealth*, 371 S.W.2d 862, 864 (Ky.App.1963); *State v. Gladden*, 260 La. 735, 257 So.2d 388, 393 (1972); *State v. Shaw*, 282 Md. 231, 383 A.2d 1104, 1106 (1978); *State v. Aus*, 105 Mont. 82, 69 P.2d 584, 586 (1937); *State v. Allesi*, 216 N.W.2d 805, 813 (N.D.1974); *People v. Bishop*, 38 Misc.2d 106, 238 N.Y.S.2d 107, 110 (1962); *Com. v. Klobuchir*, 405 A.2d 881, 885 (Pa.1979); *Pope v. Turner*, 30 Utah 2d 286, 517 P.2d 536, 538 (1973); 22 C.J.S. 636–641 Crim. Law Sec. 241.

tacked portions of the tapes. At that time the parties agreed that it was unnecessary for the court reporter to make a verbatim transcription of the taped conversations. After viewing the two exhibits, and in denying the motion, the trial court stated that it found "that the evidence of other crimes contained on the tapes is so intertwined with the balance of the tapes that it would not be practical, or possible, to delete those portions, or to edit them out, without rendering the whole tape worthless; that it appears to me it would become just a hodgepodge of seemingly unrelated segments that the jury would not be able to make any sense out of it."

During the presentation of the state's case both tapes were shown to the jury by use of a television set. When the case was submitted to the jury the trial court, at the request of defendant, gave Instruction 12.[6]

"Evidence of the commission of separate and distinct crimes is not admissible unless it is within one of the exceptions to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) common plan or scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or (5) identity of the person charged.... Such evidence must be subjected to rigid scrutiny because of its tendency 'to raise a legally spurious presumption of guilt in the minds of jurors.' ... Evidence of prior crimes is particularly prejudicial in that it 'permit[s] the jury improperly to infer that because there were [other crimes and offenses] appellant must have committed the [specific crime] charged.' ... The trial court must carefully balance 'on the one hand the actual need for such evidence, and on the other the degree to which a jury may be prejudiced against the defendant by hearing such evidence.' " (Authorities omitted.) *State v. Hamell*, 561 S.W.2d 357, 359–360 (Mo.App.1977).

▮ The Case mowers which had been stolen in Columbia were part of the same shipment which included the Yazoo mowers and edger. The relationship between the Columbia larceny and the Greene County larceny was such that testimony concerning the former may have been admissible under exception (4) set forth in *Hamell*, supra. Even if exception (4) was inapplicable, there is authority to sustain the action of the trial court in receiving both tapes, in their entirety, into evidence.

In *State v. Powell*, 595 S.W.2d 13 (Mo. App.1979) and *State v. Brown*, 584 S.W.2d 413 (Mo.App.1979) the Eastern District of this court held that the trial court did not abuse its discretion in receiving into evidence an entire videotape of defendant taken at an undercover "fencing operation" although the tape contained evidence of other crimes not related to the one for which defendant was on trial. See also *People v. Jackson*, 627 P.2d 741 (Colo. banc 1981); *U. S. v. Brooks*, 567 F.2d 134, 139 (D.C.Cir.1977); *U. S. v. Childs*, 598 F.2d 169 (D.C.Cir.1979); *U. S. v. Hiscott*, 586 F.2d 1271 (8th Cir. 1978)—Anno. 60 A.L.R.3d 333 —admissibility of videotape film in evidence in criminal trial.

▮ The general rule is that the prosecution cannot show that the defendant has been imprisoned for another crime. Wharton's Criminal Evidence (13th Ed.), Vol. 1, Sec. 240, p. 533. Evidence of defendant's imprisonment for an unknown offense was not admissible and it should have been deleted. "Harmless error is not grounds for reversal...; however, error in the admission of evidence should not be declared harmless unless it is so without question." *State v. Wright*, 582 S.W.2d 275, 277[2] (Mo. banc 1979).

This court holds that the admission of that portion of the videotape containing defendant's statement that he had been in the penitentiary for five years was harmless error. Here the evidence of defendant's

**6.** INSTRUCTION NO. 12

"If you find and believe from the evidence that the Defendant was involved in or convicted of an offense other than the one for which he is now on trial, you must not consider such previous conviction or involvement as any evidence that the Defendant is guilty of the offense for which he is now on trial."

guilt was overwhelming and the trial court, at defendant's request, gave cautionary Instruction 12. In *U. S. v. Gocke*, 507 F.2d 820 (8th Cir. 1974), the defendant contended that the playing of his tape recorded conversation before the jury constituted prejudicial error because that conversation contained a reference to his prior incarceration. The court, in rejecting the contention, said, at p. 823, "In the past we have held that similar comments of a brief and passing nature inadvertently made by witnesses, constitute harmless error."

■ The "risque sexual act" to which defendant refers involved him only as a spectator. On the videotape he stated to the troopers that he had recently been in a "high class" pool hall where he and his male partner were playing pool with another man and his pregnant wife. An argument developed between defendant's partner and the woman, during the course of which someone said something about "kissing someone's ass." The woman lowered her slacks, and defendant's partner kissed her exposed posterior. Defendant was neither the bestower nor the recipient of the osculation. This portion of the tape should have been deleted but the admission of it does not rise to the level of prejudicial error. The situation being videotaped was unlikely to generate the expression of lofty thoughts couched in Churchillian prose. The error was harmless.

Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in receiving the videotapes into evidence because the obtaining of the tapes by the law officers violated defendant's constitutional privilege against self-incrimination[7] and his constitutional right to counsel[8] and because defendant did not receive the *Miranda*[9] warnings.

Defendant was not in custody during the two videotape episodes. He was then free to come and go as he pleased and he did so. Defendant was not charged and taken into custody until several months later.

7. Fifth Amend. to U.S. Const.; Art. 1, Sec. 19, Mo. Const.

8. Sixth Amend. to U.S. Const.; Art. 1, Sec. 18(a) Mo. Const.

Defendant's constitutional privilege against self-incrimination under the Fifth Amendment was not infringed by the videotaping because his conduct and statements recorded by the tapes were wholly voluntary. In *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), defendant Hoffa made incriminating statements to one Partin who was working as an undercover agent for the government. Hoffa argued that his Fifth Amendment privilege against self-incrimination was violated by the admission of Partin's testimony. In rejecting Hoffa's contention the Court, 385 U.S. 1.c. 304, 87 S.Ct. at 414 said: "In the present case no claim has been or could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual. The petitioner's conversations with Partin and in Partin's presence were wholly voluntary. For that reason, if for no other, it is clear that no right protected by the Fifth Amendment privilege against compulsory self-incrimination was violated in this case."

Defendant's constitutional right to counsel under the Sixth Amendment was not infringed by the videotaping because criminal proceedings had not yet been instituted. "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 1882[3], 32 L.Ed.2d 411 (1972).

9. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Giving the *Miranda* warnings to defendant was not a condition precedent to the obtaining of the videotapes because defendant was not then in custody. "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' " *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

Defendant's third point has no merit.

■ Defendant's fourth point is that the trial court erred in denying defendant's motion to dismiss based on the time lapse, approximately 11 months, between the commission of the Greene County larceny and the initiation of the Greene County proceedings. Defendant claims that he was prejudiced by the time lapse and thereby denied "his right to a speedy trial, his right to due process of law, and his right to a fair trial."

In support of the motion to dismiss, defendant's counsel informed the court that defendant would testify "that the time delay has caused him to be unable to assert the defense of alibi, for the reason he can't recall, because of the passage of time, where he was on the dates in question, and whom he was with and, even if he could, the friends and associates that he had 13 months before this charge was brought against him have since dispersed and he has no idea of their whereabouts." The prosecutor stipulated that the defendant would so testify.

The foregoing summary of what defendant's testimony would have been lacks specificity. No alleged facts concerning alibi are stated. No "friends and associates" are identified. No attempts to locate them are described. No statement of what their testimony would be is given.

"As far as the Speedy Trial Clause of the Sixth Amendment is concerned, such (pre-indictment) delay is wholly irrelevant. . . . Only a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of that provision." *United States v. Lovasco*, 413 U.S. 783, 97 S.Ct. 2044, 2048, 52 L.Ed.2d

752. There the Court pointed out that statutes of limitations provide the primary guarantee against bringing overly-stale criminal charges but acknowledged that "the Due Process Clause has a limited role to play in protecting against oppressive delay." The court said, "Proof of actual prejudice makes a due process claim concrete and ripe for adjudication," but that such proof did not make the claim "automatically valid." "Proof of prejudice is generally a necessary but not sufficient element of a due process claim, and . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused."

In the wake of *Lovasco* is *United States v. Comosona*, 614 F.2d 695 (10th Cir. 1980). In *Comosona* the court delineated certain principles pertaining to due process aspects of pre-indictment and pre-arrest delays. Those principles include: dismissal is required where the defendant is able to demonstrate that the delay was the product of deliberate action by law enforcement personnel designed to gain a tactical advantage resulting in actual prejudice to the defendant, thereby depriving him of his right to a fair trial; something more than ordinary negligence on the part of government representatives must be shown no matter how high the actual proof of prejudice is; the government's delay must be intentional and purposeful; it is not the function of the reviewing court to "second-guess" the timing of the indictment or arrest in the absence of proof of these elements.

*Comosona* also pointed out that in demonstrating actual prejudice to himself resulting from the delay, defendant must usually show a loss of witnesses or physical evidence or the impairment of their effective use at trial. The court also said, l.c. 696–697: "Upon a prima facie showing of fact by a defendant that the delay in charging him has actually prejudiced his ability to defend, and that this delay was intentionally or purposely designed and pursued by the Government to gain some tactical advantage over or to harass him, the burden of going forward with the evidence shifts to the Government. Once the Government

presents evidence showing that the delay was not improperly motivated or unjustified, the defendant then bears the ultimate burden of establishing the Government's due process violation by a preponderance of evidence.... Claims of deprivation of due process rights require a specific showing of identifiable prejudice to the accused affecting his substantial rights." Finally the court stated, "Moreover, the 'real possibility of prejudice inherent in any extended delay; that memories will dim, witnesses will become inaccessible, and evidence be lost ...' is not sufficient in and of itself to demonstrate a denial of due process. *United States v. Marion,* supra, [404 U.S. 307] at 326, 92 S.Ct. [455] at 466 [30 L.Ed.2d 468]." *Comosona,* l.c. 697.

Here defendant's "proof" of actual prejudice was vague and the court was not required to believe it. Defendant made no showing that the delay "was intentionally or purposely designed and pursued by the government to gain some tactical advantage over or to harass him." Defendant failed to establish, by preponderance of the evidence, that the state deprived him of due process. Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support the conviction in that "the corpus delicti was not sufficiently proven for the extrajudicial confession of appellant to be regarded as evidence of guilt." This point has no merit and indeed borders on being frivolous.

The state proved by employees of City Utilities of Springfield that the tractors, Yazoo mowers and edger were taken from a locked warehouse in Greene County, without consent of the owner, sometime during the weekend of March 9–12. The state also proved that the articles stolen had a combined value exceeding $150. Through the troopers, with the aid of the videotapes, the state proved that the stolen articles were in the possession of the defendant and Davis within a few days after their theft. Clearly the state's evidence showed that larceny

had been committed by *someone* on the date and in the manner charged in the information. That testimony, coupled with the oral confession of defendant contained in the videotapes, is sufficient to support the conviction. *State v. Harris,* 594 S.W.2d 658, 661–662[6] (Mo.App.1980).

The judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.