**STATE of Missouri, Plaintiff-Respondent,**

v.

**William Charles ALEXANDER, Defendant-Appellant.**

**No. 13747.**

Missouri Court of Appeals, Southern District.

May 14, 1985.

Motion for Rehearing or to Transfer Denied May 30, 1985.

Application to Transfer Denied Aug. 7, 1985.

William B. Gresham, III, Poplar Bluff, for defendant-appellant.

John Ashcroft, Atty. Gen., Gary L. Gardner, John M. Morris, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant William Alexander guilty of "defrauding secured creditors," § 570.180,[1] with the amount remaining to be paid on the secured debt, including interest, being $500 or more, a Class D felony, § 570.180.2. The punishment imposed was five years' imprisonment and a fine of $5,000. Defendant appeals.

The information, in addition to its formal parts, charged that the defendant on or about May 19, 1982, in Butler County, "concealed property subject to a security interest, to-wit: one 1981 Case 580C backhoe, Serial No. 8978895; one 1981 Case 580C backhoe, Serial No. 8988898; and one 1980 used D–5 Caterpillar, Serial No. 4882901, on which the amount remaining to be paid on the secured debt, including interest, was at least $500.00."

Defendant's first two points will be considered together. Defendant's first point is that the evidence is insufficient to support the verdict. In ruling this point this court must view the evidence in the light most favorable to the state and accept all substantial evidence and all legitimate inferences fairly deducible therefrom which support the verdict. All evidence unfavorable to the state must be disregarded and the submissibility of the case will be determined upon the basis of all the evidence, including those portions of defendant's evidence which favor the state. *State v. Morton*, 684 S.W.2d 601, 604 (Mo.App.1985).

Defendant's second point is that the trial court erred in admitting, over defendant's objection, testimony of state's witnesses Ernest Carpenter and Randall Combs concerning business dealings which the two witnesses had with the defendant with regard to equipment other than the equipment mentioned in the information. Defendant argues that the testimony of the two witnesses constituted evidence of other crimes and should not have been admitted.

Clarence Stucker, a state's witness, testified that he was loan officer for the Bank of Poplar Bluff and that the bank made three secured loans to defendant. On March 6, 1981, defendant borrowed $27,462.24, and the collateral for the note was the second backhoe mentioned in the information. The amount remaining to be paid on that note exceeded $22,000. On May 15, 1981, the defendant obtained another loan, on which the unpaid balance exceeded $22,000, and the collateral was the Caterpillar. On June 8, 1981, the first backhoe mentioned in the information was the collateral for the third loan on which the unpaid balance exceeded $20,100. When loans were made defendant provided Stucker with the serial numbers of the equipment.

Stucker testified that the three installment notes "came in default" in March 1982 and he made unsuccessful attempts to contact the defendant. On May 18, 1982, at Stucker's request, an attorney for the bank sent three letters by registered mail to the defendant. The letters requested payment of the note or that the defendant "make available to the bank as soon as possible" the two backhoes and the Caterpillar.

Defendant did not return any of the equipment to the bank. Stucker testified that, based upon information defendant had given him over the phone, Stucker made trips to Bloomfield, to defendant's mother's house, and "numerous other places" and was unable to find the equipment.

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Defendant told Stucker that the Caterpillar was at Lemon's Gravel Company. Defendant went with Stucker to Lemon's Gravel Company and they talked to a man there about the Caterpillar. "Mr. Lemon said to his knowledge there was never a [Caterpillar] left at his entrance and he goes in and out on a daily basis."

On cross-examination by defense counsel, Stucker said that when he and defendant went to Bloomfield, "[defendant] said here is where it was at and I went to look and it was not there and I took it upon myself to drive down to the gravel pit and talk to the people down there and they said it had never been there."

The following testimony was elicited by defense counsel during cross-examination:

Q. Did Bill report to you that any of this equipment we are talking about here today, had been leased to anyone?

A. As I stated earlier, he stated that several pieces of it had been leased from time to time, but I couldn't never find out who it was leased to or where it was located, not by what he told me.

Ernest Carpenter, a prosecution witness, testified that on January 8, 1982, he bought a backhoe from defendant. It was not one of the backhoes mentioned in the information. The witness and his partner paid defendant $16,000 for the backhoe. Later the witness found out that the backhoe was subject to a $16,000 mortgage and he had to pay the mortgagee $16,000 to remove the lien.

Randall Combs, a prosecution witness, testified that he was employed by the First National Bank which had made four loans to the defendant. The loans were secured by nine pieces of equipment—five were backhoes and the rest were tractors and trailers. He testified that the notes "went into default on March 26, 1982," and that defendant had not paid the loans or produced any of the collateral.

On cross-examination by defense counsel, Combs testified that on March 26, 1982, defendant took the witness to look for the equipment and Combs took photographs of the equipment "[defendant] said was his."

Combs said, "None of the serial numbers would match up except for one piece and [defendant] had not paid for that piece of equipment and the dealer kept title to it."

Combs stated that he made a trip "to Dexter and Bloomfield because [defendant] told me there was equipment at a gravel company." Combs was unable to find the equipment at the gravel company. Combs also testified that the defendant told him that some of the equipment had been loaned out to individuals. Combs contacted the individuals and "they said they didn't know him."

Glen Dunlap, a prosecution witness, testified that he once made a loan to defendant on which defendant defaulted. At the time of the default the balance due was in excess of $4,300. The security for the loan was a Massey-Ferguson tractor. The witness asked the defendant to produce the tractor and the defendant told the witness, in March 1982, that the tractor was "over by Bloomfield at the gravel pit." Dunlap testified, "I went over there, it was not there and I could not find any record of it having been there. A week later I talked to [defendant] and he said that it was at a man's home 'off of Highway 25,' about four miles east where [defendant] had been doing some landscaping work for the man." The witness was not able to find anybody by that name at that location, "not at that time nor since." Dunlap said the second time he talked to defendant, defendant said he had leased the tractor to John Succo who lived up by Greenville on County Road 245. The witness said, "I was not able to find any man by that description in that area." Defendant does not challenge the admissibility of Dunlap's testimony.

Defendant, testifying on his own behalf, said that "some of this equipment I leased out in March and April, 1982, to different people," but he could not recall the names of the lessees. He said that some of his equipment had been stolen—a backhoe, a dozer and a tractor, but did not know the serial numbers of the stolen equipment.

With regard to the backhoe which Carpenter had bought, defendant testified that he paid the mortgagee by a check for $15,000 drawn on the Bank of Poplar Bluff. A bank employee, a rebuttal witness for the state, testified that there was no record of such a check.

Testifying with respect to the two backhoes and the Caterpillar named in the information, defendant admitted that he gave the Bank of Poplar Bluff a security interest in them. He then testified, "I can't say where that equipment is today. I have looked for it. I was contacted by the Bank of Poplar Bluff to help them locate that equipment. I went one time with Stucker. We went over to Dexter and Sikeston looking for a couple of pieces of equipment and we were not able to locate any of that equipment that day. I have not located it since."

On cross-examination by the prosecutor the defendant said, "I am telling the jury that I just simply lost 15 pieces of big equipment."

■ The general rule is that evidence of the commission of a separate and distinct crime, one other than the offense on trial, is not admissible unless it tends to establish motive, intent, absence of mistake or accident, common plan or scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or identity of the person charged. *State v. Shive,* 624 S.W.2d 136, 140 (Mo.App.1981). On the other hand, if proof of the commission of the separate crime reasonably tends to prove a material fact in issue in the current prosecution, it is not to be rejected merely because it incidentally proves defendant guilty of another crime. *State v. Martin,* 651 S.W.2d 645, 650 (Mo.App.1983). The admissibility of evidence of other crimes rests in considerable measure on a determination whether its probative effect is outweighed by its prejudicial impact upon the defendant. *State v. Martin,* supra, at 651.

■ "[I]n prosecutions for false pretenses and similar criminal frauds ... evidence that the accused, at about the time of the offense charged, made similar false representations or engaged in similar fraudulent dealings is admissible as tending to show a fraudulent intent or motive in the transaction on which the prosecution is based, as where a plan or scheme to defraud other victims than the complaining person or persons is indicated." *State v. Gilpin,* 320 S.W.2d 498, 501–502 (Mo.1959). To similar effect see *State v. DeClue,* 400 S.W.2d 50, 55 (Mo.1966). I Wharton's Crim.Evid. 292, § 159, (13th ed. 1972). See also *State v. Inscore,* 592 S.W.2d 809, 811 (Mo. banc 1980).

In *State v. Nienaber,* 347 Mo. 541, 148 S.W.2d 537 (1941), defendant was charged with removing 15 head of steers from Boone County with intent to defraud the mortgagee. The evidence showed that defendant hired a man to take the 15 steers to East St. Louis where they were sold. There was also evidence that a few days previously three other steers were sold by defendant in Boone County and that defendant failed to "account for the proceeds." On appeal defendant contended, unsuccessfully, that the evidence concerning the Boone County sale was inadmissible. The evidence was held to be admissible as tending to show defendant's particular criminal intent.

■ The testimony of Carpenter and Combs dealt with their respective dealings with defendant concerning mortgaged equipment of the same general type as that designated in the information. Those transactions were reasonably proximate to the date of the charged offense. The Combs transaction demonstrated an intent to defraud the mortgagee with the same lies which defendant told Stucker with respect to the location of the missing equipment. The Carpenter transaction is less similar but it, too, at least inferentially, demonstrated an intention to defraud the mortgagee with regard to the sale and removal of the mortgaged property as well as to defraud Carpenter with regard to the existence of the mortgage.

This court holds that the trial court did not abuse its discretion in admitting the testimony of Carpenter and Combs. Defendant's second point has no merit.

In *State v. Griffin*, 228 S.W. 800 (Mo. 1921), defendant was charged, under a former statute, with removing and concealing a mortgaged automobile. Although the conviction was reversed on other grounds, the court held the evidence sufficient to support the verdict. The state's evidence showed that after defendant had defaulted on his loan, he refused to deliver the automobile to the mortgagee. Defendant lied to the mortgagee in designating the place where it could be found. The car was not there, nor was it at defendant's residence or place of business.

At p. 804 the court said:

By his acts and conduct he attempted to deceive the mortgagee's agents as to the presence of the car, refused to pay the balance of the mortgage debt, refused to tell where the car was located, and refused to turn over same to the Weber Company or its agents. From the foregoing facts the jury would have the right to infer that defendant had removed said car from his own possession, concealed its location, and had placed it beyond the reach of the Weber Motor Car Company, for the purpose of hindering, delaying, or defrauding said company.

■ The jury was justified in finding that the two backhoes and the Caterpillar described in the information were subject to a security interest of the Bank of Poplar Bluff, that the amount remaining to be paid on each of the secured debts exceeded $500, and that the defendant concealed the backhoes and Caterpillar for the purpose of defrauding the bank. The evidence was sufficient to support the verdict.

Defendant's first point has no merit.

Defendant's third point is that the trial court erred in (a) failing to permit defendant to amend his plea from a plea of not guilty to a plea of "not guilty and not guilty by reason of mental disease or defect," and (b) refusing to permit testimony by expert witnesses "as to defendant's diminished capacity."

Defendant's brief states that defendant "did indeed suffer from a diminished capacity which, although it did not rise to the level of insanity or mental disease or defect as defined in § 552.010, did, nevertheless, bear upon defendant's ability to act with the purpose required as an element of the offense of defrauding a secured creditor."

The information was filed in November 1982 and defendant's initial plea, according to his brief, was not guilty.[2] On May 10, 1983, the defendant, by motion, requested the court to order a pretrial psychiatric examination of the defendant. The motion was sustained, the examination was conducted, and on October 17, 1983, the psychiatrist, Gary L. Bassett, M.D., filed his report, which included the findings of Byron English, M.S., a psychologist, as well as reports of other examiners. Defendant makes no claim that he was not provided promptly with a copy of that report.

Dr. Bassett's report, in essence, found that defendant, at the time of the alleged criminal conduct, did not have a mental disease or defect excluding responsibility, § 552.030.1, or causing him to lack "capacity to understand the proceedings against

---

2. Rule 30.04 requires the legal file to contain, among other things, "defendant's arraignment or waiver thereof and plea." The instant legal file contains a "waiver of arraignment" signed by defendant and his attorney and filed with the clerk of the trial court on November 3, 1982. It does not contain a plea.

Section 546.020 reads, in pertinent part: "[N]o judgment rendered in any criminal case shall be reversed, set aside or for naught held for the reason that the record does not show

that the defendant was arraigned and a plea of not guilty entered, where a trial was had in all respects as though the defendant had been arraigned and had formally tendered the general issue under a plea of not guilty." See *State v. Battle*, 588 S.W.2d 65, 70 (Mo.App.1979), where the defendant was tried without explicitly entering a not guilty plea. Citing § 546.020 the court said, "Here the trial court did proceed as if appellant had pleaded not guilty. Thus, the judgment will not be disturbed."

him or to assist in his own defense," § 552.020.1.

The case was set for trial on January 4, 1984, later reset for trial on February 1, 1984, and was tried on that date. After voir dire examination defense counsel, in chambers, asked leave of court "to amend my pleadings to permit me to file an af-. firmative defense of not guilty by reason of mental disease or defect." The prosecutor objected to the request as being untimely. Defense counsel informed the court that he had been aware of "the facts of that defense" since he had received the report of the psychiatrist. Defense counsel also informed the court that he had subpoenaed Dr. Bassett and Mr. English and that they were present.

Referring to the report of Dr. Bassett, the court said, "It seems to me like they gave him a clear bill of health." Defense counsel stated that he was basing his defense "on the body of the report and not the conclusions and findings," and conceded that "the testimony would be somewhat contradictory to the findings." The court then denied the request to amend the plea.

Thereupon defense counsel said, "In view of your ruling on my motion to amend, I ask for a continuance for the purpose of amending my pleadings to raise the defense of not guilty by reason of mental disease or defect." Counsel stated that he had no medical evidence "other than Bassett and English," and the court asked counsel "if either of them is going to say in his expert opinion that this man has a mental disease or defect." Counsel replied, "That I can't say. What they will say is that he has a substantially diminished mental capacity." Asked by the court if the witnesses were going to say that the defect "falls within Chapter 552," counsel replied that he did not know. Counsel informed the court that he had talked with the two witnesses "since October 1983" and did not have a good excuse for not having given the state "statutory notice."

Counsel then stated to the court, "My witnesses are here and I can discuss with them and see if they can testify in terms of mental disease or defect."

The record shows:

A recess was then taken for [defense counsel] to talk to his witnesses and his client.

THE COURT: [Court reporter], let your record show that [defense counsel] has informed the court he withdraws his motion; is that correct [defense counsel]?

[DEFENSE COUNSEL]: Yes, Your Honor.

Section 552.030 reads, in pertinent part:

1. A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law.

2. Evidence of mental disease or defect excluding responsibility shall not be admissible at trial of the defendant unless the defendant at the time of entering his plea to the charge pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty or at such later date as the court may for good cause permit, he files a written notice of his purpose to rely on such defense. Such a plea or notice shall not deprive the defendant of other defenses....

3. Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible:

(1) To prove that the defendant did or did not have a state of mind which is an element of the offense....

In *State v. Strubberg*, 616 S.W.2d 809 (Mo. banc 1981), the court discussed the distinction between the type of mental disease or defect defined in § 552.030.1 and the "doctrine of partial responsibility or diminished capacity," embodied in § 552.-030.3(1). At p. 816 the court said:

If appellant wanted to expunge himself of all criminal responsibility for his acts by reason of a mental disease or defect,

he could only do so by pleading not guilty by reason of mental disease or defect excluding responsibility and by compliance with all the conditions of § 552.030. The partial responsibility doctrine may not be used by a defendant to avoid all criminal responsibility for his acts.... The diminished or partial responsibility doctrine means the allowing of proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design.... [I]t contemplates full responsibility, not partial, but only for the crime actually committed. Since application of the partial responsibility doctrine presupposes guilt of some crime, appellant necessarily introduced evidence upon the issue of his guilt.

.     .     .     .     .

What is meant by the statement that "application of the partial responsibility doctrine presupposes guilt of some crime" is that if the jury determines there is sufficient evidence to support a finding against the defendant on all the factual elements necessary to convict the defendant of a crime before the jury applies the partial responsibility doctrine, then upon applying the partial responsibility doctrine, the jury is only authorized to lessen the degree of the defendant's guilt to that of a lesser included offense. The jury is not authorized under the partial responsibility doctrine, to completely exonerate the defendant of all criminal responsibility for his acts.

Defendant's third point assumes that evidence cannot be adduced in support of the doctrine of diminished capacity unless defendant has pleaded the defense of not guilty by reason of mental disease or defect. In other words, the brief assumes that such evidence would not be admissible under a plea of not guilty.[3] It is not necessary, under the instant record, for this court to examine the validity of that assumption.

■ If, arguendo, it was necessary for defendant to change his plea to include a plea of not guilty by reason of mental disease or defect excluding responsibility before he was authorized to introduce evidence in support of the doctrine of diminished capacity, defendant failed to comply with the "written notice" requirement of § 552.030.2. The record does not reflect the date of his plea of not guilty, if in fact such a plea was entered, but over a year had elapsed from the date defendant filed his waiver of arraignment. In support of his motion to change his plea, defendant made no formal offer of proof although his witnesses were available. Defense counsel had been in possession of Dr. Bassett's report for several months. The oral motion to change the plea was not presented until the morning of the trial, after voir dire had been completed. The trial court, in making its ruling, could properly have found that defendant failed to show "good cause" for the delayed oral request. In *State v. Holt*, 613 S.W.2d 707, 710 [4, 5] (Mo.App.1981), this court affirmed a trial court's denial of defendant's request to change his plea from not guilty to not guilty by reason of mental disease or defect excluding responsibility when that request was oral and was made more than five months after the not guilty plea.

■ If, arguendo, evidence of diminished capacity was admissible under a plea of not guilty, defendant failed to avail himself of that privilege. Although his expert witnesses were present, defendant did not call

3. Recognized experts on Missouri's mental responsibility law have stated, "Defendant would be well advised, out of an abundance of caution, to plead the 'defense' of partial and diminished responsibility if he intends to rely upon them." Richardson, Reardon & Simeone, "Missouri's Mental Responsibility Law, A Symposium: An Analysis of the Law," 19 J.Mo.Bar 677, 707 (1963).

In at least two cases, *State v. Strubberg*, 616 S.W.2d 809 (Mo. banc 1981) and *State v. Cason*, 596 S.W.2d 436 (Mo.1980), the doctrine of diminished capacity has been submitted to the jury under a plea of not guilty. The issue of the sufficiency of that plea to authorize that submission, if supported by the evidence, was not raised. Section 552.030.3(1) has been termed "a rule of evidence." *State v. Anderson*, 515 S.W.2d 534, 542 (Mo. banc 1974).

them to the stand. Accordingly prong (b) of defendant's third point has no factual basis. The trial court did not refuse to receive the testimony of his expert witnesses. It merely denied, properly, defendant's motion to amend his plea. Defendant's third point has no merit.

Defendant's fourth point is that the trial court erred "in failing to make a finding and determination as required by statute and in failing to determine by hearing that defendant was fit to proceed to trial." Defendant relies upon § 552.020.7 RSMo Cum.Supp.1983, which reads, in pertinent part:

> If neither the state nor the accused nor his counsel contests the opinion referred to in subsection 3, subdivision (1), of this section relative to fitness to proceed, the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its own motion. If any such opinion is contested the court shall hold a hearing on the issue. The report or reports may be received in evidence at any hearing on the issue but the party contesting any opinion therein relative to fitness to proceed shall have the right to summon and to cross-examine the individuals who rendered such opinion and to offer evidence upon the issue.

■ There is no reason to repeat the happenings discussed under defendant's third point. The trial court had before it the report of Dr. Bassett containing his opinion that the defendant did not, as a result of a mental disease or defect, lack capacity to understand the proceedings against him or to assist in his own defense. The action of the trial court in ordering the trial to proceed, after defendant's motion to amend his plea had been denied, was tantamount to a determination and finding of defendant's fitness to proceed. *Jones v. State,* 505 S.W.2d 96, 99 [6] (Mo.App.1974); *Bibbs v. State,* 504 S.W.2d 319, 323 [8] (Mo.App.1973), cert. den. 419 U.S. 852, 95 S.Ct. 95, 42 L.Ed.2d 84; *Miller v. State,* 498 S.W.2d 79, 83 [6] (Mo.App.1973). Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court erred in denying defendant's request for a presentence investigation and a "presentence commitment for study," because the trial court had before it "substantial evidence creating a strong likelihood that defendant suffered from a mental disease or defect."

■ With respect to the presentence investigation, defendant relies upon § 557.-026 which required a presentence investigation in all felony cases, unless waived by the defendant, when a probation officer was available to the court. Defendant overlooks the fact that Rule 29.07(a)(1), which superseded the statute, "makes the use of presentence investigations and reports by the trial court in felony cases discretionary rather than mandatory." *State v. Phroper,* 619 S.W.2d 83, 91 [11] (Mo.App.1981). See also *State v. Barnard,* 678 S.W.2d 448, 452 [7, 8] (Mo.App.1984). The instant record does not show that the trial court abused its discretion in not ordering a presentence investigation.

With respect to the "presentence commitment for study," defendant relies on § 557.031.1, which reads:

> In felony cases where the circumstances surrounding the commission of the crime or other circumstances brought to the attention of the court indicate a strong likelihood that the defendant is suffering from a mental disease or disorder, and the court desires more detailed information about the defendant's mental condition before making an authorized disposition under section 557.011, it may order the commitment of the defendant for mental examination.

Defendant's post-trial motion contained no request for an additional examination. The statute, under the conditions it describes, permits the trial court, in its discretion, to order the commitment of the defendant for mental examination. The instant record does not demonstrate that the trial court abused its discretion in not requiring an additional mental examination. See *State v. Green,* 641 S.W.2d 770, 773 [3]

(Mo.App.1982). Defendant's fifth point has no merit.

The judgment is affirmed.

PREWITT, C.J., and TITUS, MAUS and CROW, JJ., concur.